[Cite as *Dennis v. Gen. Motors Corp.*, 2016-Ohio-247.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### DEFIANCE COUNTY

FAYRENE DENNIS, SURVIVING
SPOUSE OF JOHNNY DENNIS,
DECEASED,

CASE NO.  4-15-09

    PLAINTIFF-APPELLEE,

    v.

GENERAL MOTORS CORP., ET AL.,

O P I N I O N

    DEFENDANT-APPELLANT.

**Appeal from Defiance County Common Pleas Court**
**Trial Court No. 09-CV-39924**

**Judgment Affirmed**

**Date of Decision:   January 25, 2016**

APPEARANCES:

    *Mark S. Barnes*  **for Appellant**

    *Shawn M. Acton* **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, General Motors Corporation ("GM"), appeals the decision of the Court of Common Pleas of Defiance County denying its motion for summary judgment. For the following reasons, we affirm the judgment of the trial court.

{¶2} On May 4, 2009, Plaintiff-Appellee, Fayrene Dennis ("Fayrene"), as the surviving spouse of Johnny Dennis ("Johnny"), filed a complaint against GM and the Ohio Bureau of Workers' Compensation ("the Bureau"). In her complaint, Fayrene alleged that Johnny was employed by GM and was exposed to asbestos in the course of his employment. According to Fayrene, this exposure caused Johnny to contract an occupational disease described as lung cancer. Johnny died on July 22, 2003. Fayrene alleged that she filed an application for the payment of death benefits under the Ohio Workers' Compensation Act, but was denied the right to participate in the Workers' Compensation Fund for widow's benefits on April 22, 2006.

{¶3} The Bureau filed its answer on May 28, 2009. Counsel for the Bureau wrote a letter, dated May 27, 2009, which stated that the Bureau would not be participating in the matter unless GM refused to defend the lawsuit. GM filed its answer on June 9, 2009.

{¶4} On June 18, 2014, GM filed a motion for summary judgment instanter. In its motion, GM argued that it was entitled to judgment as a matter of law because no genuine issue of material fact existed because Fayrene failed to follow the procedural requirements set out in R.C. 4123.68(Y) and R03-1-02 for claimants seeking benefits for asbestosis or an asbestos-related disease. Specifically, GM argued that Fayrene failed to provide the Bureau with a pulmonary function test. As evidence supporting its motion, GM submitted the report of Dr. Laxminarayana Rao and the affidavit of Janelle Matuszak.

{¶5} Fayrene filed her brief in opposition to GM's motion for summary judgment on July 29, 2014. Fayrene argued that GM waived the affirmative defense of failure to exhaust an administrative remedy.[1] Specifically, GM did not argue that Fayrene had failed to comply with R.C. 4123.68(Y) and R03-1-02 at any point prior to its motion for summary judgment instanter. She also argued that she was in compliance with the statute and resolution.

{¶6} GM filed its reply memorandum in support of its motion for summary judgment on August 15, 2014. In its reply, GM argued that the statutory definition of "asbestosis" was broader than the medical definition of "asbestosis" and any asbestos disease, other than mesothelioma, would fall under the definition.

---

[1] Because our analysis of whether asbestos-related lung cancer falls under the definition of "asbestosis" is dispositive, we choose not to address the issue of whether GM's argument that Fayrene failed to comply with R.C. 4123.68(Y) and R03-1-02 constitutes an affirmative defense. Therefore, this opinion should not be cited as authority in regard to that issue in the future.

Because Fayrene filed a claim for an asbestos-related disease, lung cancer, she needed to comply with the requirements in R.C. 4123.68(Y) and R03-1-02.

{¶7} On August 18, 2014, Fayrene filed a notice of supplemental authority. In the notice, Fayrene provided GM and the court with the case of *State ex rel. Hubbard v. Indus. Comm.*, 96 Ohio St.3d 336, 2002-Ohio-4795 in support of her position that R.C. 4123.68(Y) and R03-1-02 do not apply to workers' compensation claims involving asbestos-related lung cancer.

{¶8} The court denied GM's motion for summary judgment on November 12, 2014. Specifically, the court denied GM's motion "[b]ased on the reasoning set forth in this Court's decision in Shephard v. Powertrain, Case No. 09-CV-39944 * * *." (Docket No. 109).

{¶9} The case proceeded to jury trial on April 7, 2015. The jury returned a verdict in favor of Fayrene on April 10, 2015, finding that she could participate in the workers' compensation program. The court approved the jury's verdict and entered judgment in favor of Fayrene on April 13, 2015.

{¶10} GM filed this timely appeal, presenting the following assignment of error for our review.

### *Assignment of Error*

**THE TRIAL COURT ERRED BY DENYING GENERAL MOTORS' MOTION FOR SUMMARY JUDGMENT BECAUSE THERE ARE NO GENUINE ISSUES AS TO A**

**MATERIAL FACT THAT APPELLEE FAILED TO FOLLOW THE PRESCRIPTIONS OF RESOLUTION R03-1-02.**

**{¶11}** In its sole assignment of error, GM argues that the trial court erred by denying its motion for summary judgment. Specifically, GM argues that it was entitled to judgment as a matter of law because asbestos-related lung cancer falls under the definition of asbestosis, which triggers the requirements of R.C. 4123.68(Y) and R03-1-02, and that Fayrene failed to follow those requirements. We disagree.

**{¶12}** An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist.1999). Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, *Inc.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being

entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." *Id.* If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. City of Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

{¶13} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument. *Id.* at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. *Id.*; Civ.R. 56(E).

### *R.C. 4123.68(Y)*

{¶14} "In construing statutes, we must read words and phrases in context and construe them in accordance with rules of grammar and common usage." *Kimber v. Davis*, 10th Dist. Franklin No. 12AP–888, 2013-Ohio-1872, ¶ 12, citing *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, ¶ 11. Further, it is the duty of this court "to give effect to the words used in a statute, not to insert words not used." *State v. S.R.*, 63 Ohio St.3d 590, 595 (1992), citing *Cleveland Elec. Illum. Co. v. City of Cleveland*, 37 Ohio St.3d 50 (1988),

paragraph three of the syllabus. If a statute's language is clear and unambiguous, the court must apply the statute as written. *Cheap Escape Co., Inc. v. Haddox, L.L.C.*, 120 Ohio St.3d 493, 2008-Ohio-6323, ¶ 9.

{**¶15**} R.C. 4123.68(Y) provides, in relevant part,

\* \* \*

Before awarding compensation for disability or death due to silicosis, *asbestosis*, or coal miners' pneumoconiosis, the administrator shall refer the claim to a qualified medical specialist for examination and recommendation with regard to the diagnosis, the extent of disability, the cause of death, and other medical questions connected with the claim. \* \* \* In the event that an employee refuses to submit to examinations, including clinical and x-ray examinations, after notice from the administrator, or in the event that a claimant for compensation for death due to silicosis, *asbestosis*, or coal miners' pneumoconiosis fails to produce necessary consents and permits, after notice from the commission, so that such autopsy examination and tests may be performed, then all rights for compensation are forfeited.

\* \*.\*

(Emphasis added.)

{**¶16**} The facts are, for the most part, undisputed. Rather, the issue in this case is the definition of asbestosis and whether asbestos-related lung cancer falls under that definition. If it does, then R.C. 4123.68(Y) applies. If it does not, then the requirements do not apply, and GM is not entitled to judgment as a matter of law.

{¶17} "Asbestosis" is defined in two separate titles of the Revised Code. First, it has been defined as "*a disease* caused by inhalation or ingestion of asbestos, demonstrated by x-ray examination, biopsy, autopsy, or other objective medical or clinical tests." (Emphasis added.) R.C. 4123.68(AA). The Supreme Court of Ohio has found that "a disease" is the determinative phrase in that definition. *Hubbard*, 2002-Ohio-4795 at ¶ 13. In *Hubbard*, the court held that mesothelioma was not asbestosis and, therefore, the requirements of R.C. 4123.68(Y) were not applicable. *Id.* The court highlighted the distinction between "a disease" and "any disease" contracted through asbestos inhalation. *Id.* The court went on to state that the medical definition of asbestosis is "a pneumonoconiosis, an '[i]nflammation commonly leading to fibrosis of the lungs.' " *Id.*, quoting Stedman's Medical Dictionary (26th Ed.1995) 153, 1391. "Mesothelioma * * * is a cancer, '[a] rare neoplasm derived from the lining cells of the pleura and peritoneum which grows as a thick sheet covering the viscera * * *.' " *Id.*, quoting Stedman's Medical Dictionary (26th Ed.1995) 1096.

{¶18} The Supreme Court's analysis is supported by the Revised Code's second definition of "asbestosis." In R.C. 2307.91(D), "asbestosis" is defined as "bilateral diffuse interstitial fibrosis of the lungs caused by inhalation of asbestos fibers." In a different subsection of the statute, "lung cancer" is defined as "a malignant tumor in which the primary site of origin of the cancer is inside the

lungs * * *." R.C. 2307.91(R). Thus, for the purposes of civil asbestos-related claims, lung cancer and asbestosis are two distinct things.

{¶19} The Supreme Court's decision in *Hubbard* is directly on point in the case sub judice. GM argues that *Hubbard* should be distinguished because it dealt with mesothelioma and not lung cancer. Although this is true, we nonetheless find the court's decision in *Hubbard* to be persuasive. Like here, the court was presented with two diseases: mesothelioma and asbestosis. A nearly identical question was presented to the court, asking the court to determine if mesothelioma fell under the definition of asbestosis for the purposes of R.C. 4123.68(Y). The fact that mesothelioma has been replaced with lung cancer here does not remove *Hubbard* for analysis purposes.

{¶20} Just as the court in *Hubbard* found that mesothelioma was not asbestosis, we find that lung cancer caused, at least in part, by asbestos exposure does not fall under the definition of asbestosis. Again, we highlight that asbestosis is "a disease" caused by asbestos exposure. *See Hubbard*, 2002-Ohio-4795 at ¶ 13. "A disease" connotes that asbestosis is only *one of many* diseases that can be contracted from asbestos exposure. *See id.* Mesothelioma is one of these many diseases. *Id.* The language of R.C. 4123.68(AA) is clear and unambiguous. "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory interpretation."

*State v. Taylor*, 114 Ohio App.3d 416, 422 (2d Dist.1996). Unlike cancer, asbestosis is not a name for a group of diseases. Rather, it is one specific disease. Because lung cancer is not that one disease, lung cancer caused by asbestos exposure does not fall under the definition of asbestosis.

{¶21} Since Fayrene's claim was based on a claim for Johnny's death due to asbestos-related lung cancer and not asbestosis, the provisions of R.C. 4123.68(Y) do not apply.

*Ohio Industrial Commission Resolution R03-1-02*

{¶22} Before the court's decision in *Hubbard*, the relevant Ohio Industrial Commission ("OIC") resolution regarding what evidence a claimant must produce for a claim due to injury or death caused by asbestosis was R96-1-01. Enacted on February 26, 1996, R96-1-01 reads, in relevant part,

> THEREFORE BE IT RESOLVED that it is the policy of the Industrial Commission that at a minimum the following evidence is necessary to be submitted by the *claimant* prior to the referral of the claim to the Administrator for an examination by a qualified medical specialist pursuant to the provisions of Section 4123.68 concerning claims for occupational diseases of the respiratory tract resulting from injurious exposure to dust:
>
> A written interpretation of x-rays by a certified "B reader."
>
> Pulmonary functions studies and interpretation by a licensed physician.
>
> An opinion of causal relationship by a licensed physician.

(Emphasis added.)

{**¶23**} In response to the court's decision in *Hubbard*, the OIC modified R96-1-01 on March 5, 2003. The new resolution, R03-1-02, reads, in relevant part,

> THEREFORE BE IT RESOLVED that Resolution R96-1-01 be modified to the extent that it is the policy of the Commission that, at a minimum, the following evidence is necessary to be submitted by the *injured worker* prior to the referral of the claim to the Administrator for an examination by a qualified medical specialist pursuant to the provisions of Section 4123.68 of the Ohio Revised Code concerning claims for asbestosis, as well as for claims for silicosis, coal miners pneumoconiosis, and for occupational diseases of the respiratory tract resulting from injurious exposure to dust, and at a minimum, the following evidence is also necessary to be submitted by an *injured worker* prior to the adjudication of a contested claim filed for any asbestos-related occupational disease, other than mesothelioma:
>
> A written interpretation of x-rays by a certified "B reader."
>
> Pulmonary functions studies and interpretation by a licensed physician.
>
> An opinion of causal relationship by a licensed physician.

(Emphasis added.)

{**¶24**} It is undisputed that Fayrene failed to provide the Bureau with the pulmonary function tests described in both the old and modified resolutions. Thus, unless the resolution is inapplicable, GM would be entitled to judgment as a matter of law.

{**¶25**} The OIC made one important change in drafting R03-1-02 that controls this case. According to R96-1-01, a "claimant" was required to submit

the three pieces of evidence to the Bureau. The OIC removed "claimant" from the language of R03-1-02 and replaced it with the term "injured worker." Whereas Fayrene would certainly be considered a "claimant," given that she is the one that filed the claim, she would not be considered an "injured worker" under R03-1-02 since she was neither employed by GM nor the one that was injured. The language of the resolution is clear and unambiguous. Only injured workers must submit the three pieces of evidence listed in the resolution. We conclude that the OIC must have made the conscious decision to replace "claimant" with "injured worker." We refuse to adopt GM's position and seemingly ignore the choices of the OIC. Because Fayrene is not an "injured worker," she was not required to submit the three pieces of evidence required by R03-1-02.[2]

{¶26} GM argues that summary judgment should have been granted in its favor given this court's previous decision in *Anders v. Powertrain Div., Gen. Motors Corp.*, 157 Ohio App.3d 815, 2004-Ohio-2469 (3d Dist.). In *Anders*, we found that the claimants' failure to submit the evidence required by R96-1-01

---

[2] In addition to this point, two recent pieces of authority from the ICO have been brought to this court's attention by Fayrene. While we have not relied on these additional authorities, we note that they are consistent with our holding.

First, the ICO recently enacted Resolution R15-1-01 on September 28, 2015, which modified R96-1-01 and R03-1-02. Importantly, R15-1-01 explicitly provides that the evidence required under the previous resolutions is *not required* in death claims. "* * * [T]he following evidence is also necessary to be submitted by an injured worker, *in claims other than death claims*, prior to the adjudication of a contested claim filed for any asbestos-related occupational disease, other than mesothelioma * * *." (Emphasis added.) *Id.*

Second, the ICO recently found that R.C.4123.68(Y) is inapplicable to a death claim based on the diagnosis of asbestos-related lung cancer and ordered that a surviving spouse's death claim proceed to a hearing on the merits. *See* Appellee's Second Notice of Supplemental Authority, Ex. A, p. 1.

prevented them from participating in the Workers' Compensation Fund. *Id.* at ¶ 32. Specifically, all the claimants were injured workers that had failed to submit either the pulmonary function tests or the causal relationship opinion. *Id.* at ¶ 4.

{¶27} *Anders* is distinguishable from the case sub judice. In *Anders*, the claimants filed claims seeking compensation for injuries due to their contracting asbestosis from their employment. *Id.* at ¶ 3. In this case, Fayrene did not file a claim seeking benefits for Johnny's death due to asbestosis. Rather, she claimed entitlement because of Johnny's death due to asbestos-related lung cancer. As we found supra, asbestosis and asbestos-related lung cancer are not the same disease. Thus, while the claimants in *Anders* were required to submit the required evidence, Fayrene was not required to do the same.

{¶28} *Anders* is also distinguishable because all the claimants in *Anders* were injured workers. Contrast this fact with Fayrene, who was the surviving spouse of an injured worker. Although Fayrene would be considered a claimant, she was not an injured worker. With the modification of R96-1-01 in R03-1-02, the claimants in *Anders* would still be required to submit the evidence because they fall under the definition of "injured workers." This is different than Fayrene because while she would have been subjected to the requirements of R96-1-01 being that she is a claimant, Fayrene is not subjected to the requirements of R03-1-02 because she is not an injured worker.

{¶29} Given that neither R.C. 4123.68(Y) nor R03-1-02 was applicable in this case, GM was not entitled to judgment as a matter of law. Therefore, the trial court did not err by denying GM's motion for summary judgment.

{¶30} Accordingly, we overrule GM's sole assignment of error.

{¶31} Having found no error prejudicial to GM, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**